IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GRISELDA MCGEHEE; MARTHA GARCIA BARAJAS; KENIA AGUILAR; DILCIA AMAYA GOMEZ; and HILDA MARQUEZ VELASQUEZ, <br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.; DEBORAH MILLER; and DAVID STEVENS,<br><br>Defendants. | Civil Action No. _____ |

## COMPLAINT

Plaintiffs Griselda McGehee, Martha Garcia Barajas, Kenia Aguilar, Dilcia Amaya Gomez, and Hilda Marquez Velasquez (collectively "Plaintiffs") bring this complaint against Defendants Wells Fargo Bank, N.A. ("Wells Fargo"), Deborah Miller, and David Stevens for fraudulent and deceptive business practices and racketeering, and would allege as follows:

### PARTIES

1. Plaintiff Griselda McGehee is a Tennessee resident who lives in Davidson County, Tennessee.

2. Plaintiff Martha Garcia Barajas is a Tennessee resident who lives in Davidson County, Tennessee.

3. Plaintiff Kenia Aguilar is a Tennessee resident who lives in Davidson County, Tennessee.

4. Plaintiff Dilcia Amaya Gomez is a Tennessee resident who lives in Davidson County, Tennessee.

5. Plaintiff Hilda Marquez Velasquez is a Tennessee resident who lives in Davidson County, Tennessee.

6. Defendant Wells Fargo Bank, National Association is a California national bank corporation authorized to do business in the State of Tennessee at its multiple retail locations throughout the State. Defendant can be served on its registered agent, the Corporation Service Company, at 2908 Poston Avenue, Nashville, TN 37203.

7. Defendant Deborah Miller is a Tennessee resident who, upon information and belief, resides in Williamson County.

8. Defendant David Stevens is a Tennessee resident who resides in Rutherford County.

## JURISDICTION AND VENUE

9. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as mandated by 18 U.S.C. § 1964(a), as well as 28 U.S.C. § 1367.

10. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b) because both Plaintiffs and Defendants reside in this district, Defendants do business in this district, and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## BACKGROUND

11. Plaintiffs are former employees of Diversified Global Services, LLC ("DGS"), a commercial cleaning business operating both in Middle Tennessee and Houston, Texas.

12. DGS is owed and operated by two individuals, Debora Miller ("Miller") and David Stevens ("Stevens").

13. DGS hired the individual Plaintiffs in late April and early May of 2014.

14. DGS initially committed to make payroll payments to Plaintiffs by check.

15. However, on May 16, 2014, Miller informed Plaintiffs that DGS would only make future payroll payments through direct deposit.

16. Specifically, Miller advised Plaintiffs that they must each open a checking account at Wells Fargo, which would now be handling DGS's payroll processing, and that this was the only way Plaintiffs could be paid their wages.

17. That same day, at approximately 6:00 p.m., Miller took Plaintiffs to a Wells Fargo branch on Westgate Circle in Brentwood. The branch was closed, but Miller had arranged a meeting with the branch manager, Martha Dunn ("Dunn"), who met Miller and Plaintiffs.

18. Dunn explained to Plaintiffs that, going forward, she would receive all the timesheets from DGS employees and manage DGS's payroll. Dunn told Plaintiffs that having a Wells Fargo checking account was the only way for Plaintiffs to receive their pay.

19. Plaintiffs were skeptical of this after-hours meeting, and they told Dunn that they did not want to open accounts at Wells Fargo. Dunn, however, encouraged them to do so. She assured Plaintiffs that she had known Miller for a very long time and that Miller was trustworthy. Dunn assured Plaintiffs that they had a good future with DGS and Wells Fargo.

20. Dunn also promised that, once she began managing DGS's payroll, she would receive the employees' hours from DGS, pay Plaintiffs on time, and begin providing various employee benefits to Plaintiffs.

21. Based on these statements by Dunn, each Plaintiff, except Plaintiff Marquez Velasquez, opened checking accounts at Wells Fargo on May 16, 2014.

22. Dunn informed Plaintiff Marquez Velasquez that she did not have the proper forms of identification needed to open an account.

23. Upon information and belief, and without Plaintiff Marquez Velasquez's knowledge or consent, Miller subsequently opened a joint bank account in both her name and Plaintiff Marquez Velasquez's name, using falsified forms of identification for Plaintiff Marquez Velasquez, at a Wells Fargo branch in the Galleria area of Houston, Texas.

24. Dunn's representations on behalf of Wells Fargo proved to be false. Wells Fargo did not begin handling DGS's payroll processing. Plaintiffs never began receiving welfare or pension benefits. Wells Fargo did not collect Plaintiff's timesheets. DGS never instituted a direct deposit payroll system through Wells Fargo. Opening a Wells Fargo checking account was not necessary to receive their pay. Miller was not an honest or trustworthy person.

25. Instead, from that time on, DGS began writing payroll checks made out to each Plaintiff and depositing those checks at Wells Fargo.

26. Specifically, Miller and Stevens took paper checks to the Brentwood Wells Fargo branch and presented those checks for deposit. Wells Fargo, through Dunn and its other employees, received those checks from Miller and/or Stevens, despite the fact that the checks were made payable to individual Plaintiffs.

27. Wells Fargo, through Dunn and its other employees, processed those checks without endorsement from the Plaintiff to whom the check was made.

28. Plaintiffs never saw their pay checks before they were deposited into their respective Wells Fargo accounts.

29. Plaintiffs never endorsed these payroll checks. However, Wells Fargo accepted and converted the checks absent Plaintiffs' endorsement.

30. Upon information and belief, in or about March 2014, Miller and Stevens similarly took at least two DGS employees to open bank accounts, through the same or similar misrepresentations by Defendants, at the Galleria Wells Fargo bank branch in Houston, Texas.

31. Plaintiffs had electronic access to their Wells Fargo accounts and could view the payroll deposits made electronically. Plaintiffs periodically reviewed their account deposits online throughout the relevant period.

32. Based on Dunn's representations and the electronic bank statements, Plaintiffs believed that DGS was making payroll payments via direct deposit into their accounts.

33. Believing that their pay had been deposited in their Wells Fargo accounts, Plaintiffs made purchases and otherwise spent the money in those accounts.

34. Plaintiffs later learned that most of DGS's payroll checks had been returned for insufficient funds. Specifically, Plaintiffs received communications through the postal mail from Wells Fargo on various instances in June 2014 alerting them that the checks had been returned for insufficient funds and charging them fees for the return.

35. As a result, Plaintiffs' account balances dropped below zero dollars.

36. Plaintiffs eventually figured out that, contrary to Dunn's representations, Wells Fargo was not handling DGS's payroll or processing payments via direct deposit.

37. Plaintiffs left their employment with DGS on or about June 23, 2014.

38. Plaintiffs are still owed their wages for work performed for DGS.

39. Wells Fargo has assessed Plaintiffs fees due to the return of DGS's checks, as well as overdraft fees.

{004856/14578/00348643.DOC / Ver.4}

5

Case 3:15-cv-00530   Document 1   Filed 05/06/15   Page 5 of 11 PageID #: 5

## CAUSES OF ACTION

### COUNT I
### Violation of the Racketeer Influenced and Corrupt Organizations Act
### 18 U.S.C. § 1961 *et seq.*

40. Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

41. The Racketeer Influenced and Corrupt Organizations Act of 1970, codified at 18 U.S.C. § 1961 *et seq.* ("RICO"), provides civil remedies for persons injured by the acts of persons operating an enterprise engaged in a pattern of racketeering activities.

42. Plaintiffs are persons within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

43. Defendants are persons within the meaning of 18 U.S.C. §§ 1961(3) and 1962.

44. Defendants willfully and intentionally committed, and conspired with each other to commit, the following racketeering activities, as defined by 18 U.S.C. § 1961(1):

   a. Acts indictable under 18 U.S.C. § 1028 (fraud and other activity in connection with identification documents);

   b. Acts indictable under 18 U.S.C. § 1341 (mail fraud);

   c. Acts indictable under 18 U.S.C. § 1343 (wire fraud);

   d. Acts indictable under 18 U.S.C. § 1344 (financial institution fraud); and

   e. Acts indictable under 18 U.S.C. § 1956 (laundering of monetary instruments).

45. Defendants' actions described herein constitute multiple continuous and related acts of racketeering activity spanning a period of many months, against each Plaintiff on multiple occasions, and in at least two States (Tennessee and Texas), so as to establish a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(5) and 1962.

46. Defendants' past conduct poses the threat of future repetition. Upon information and belief, Miller and Stevens continue to operate their commercial cleaning business and Wells Fargo continues to aid Miller and Stevens in committing the pattern of racketeering described herein as part of their ongoing business activities.

47. Defendants invested the monies wrongfully taken from Plaintiffs in DGS, in violation of 18 U.S.C. § 1962(a), in order to operate and expand that fraudulent enterprise and perpetrate acts of fraud and racketeering against other DGS employees.

48. Further, Defendants received income from prior acts of racketeering perpetrated against prior DGS employees and used or invested those monies to operate and expand that enterprise and injure Plaintiffs, in violation of 18 U.S.C. § 1962(a).

49. DGS is an enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962. Further, defendants, Dunn, and other individual employees of Wells Fargo are individuals associated in an enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962.

50. Defendants have used the enterprise to conduct a pattern of racketeering activities in violation of 18 U.S.C. § 1962(c).

51. Defendants have agreed to operate and manage the aforementioned enterprise in a conspiracy to violate 18 U.S.C. §§ 1962(a) and (c), in violation of 18 U.S.C. § 1962(d). Specifically, Defendant Wells Fargo knowingly agreed to facilitate the operation and management of the enterprise by Defendants Miller and Stevens.

52. Defendants Miller and Stevens, individually and by joint management of DGS, agreed to commit the various racketeering activities alleged herein against Plaintiffs and other DGS employees on multiple occasions both in Tennessee and Texas.

{004856/14578/00348643.DOC / Ver.4}

7

Case 3:15-cv-00530   Document 1   Filed 05/06/15   Page 7 of 11 PageID #: 7

53. Defendant Wells Fargo agreed to the commission of these various racketeering activities by Miller and Stevens through its knowing and intentional facilitation. Defendant Wells Fargo also agreed itself to commit various of the racketeering activities alleged herein against Plaintiffs and other DGS employees on multiple occasions both in Tennessee and Texas.

54. Plaintiffs have suffered concrete financial loss due to Defendants' actions in the form of lost wages and promised benefits in conjunction with hours worked by Plaintiffs for DGS, as well as fees and penalties charged Plaintiffs by Wells Fargo.

55. Plaintiffs are entitled to all remedies available for violation of RICO, including but not limited to treble damages and costs of this action, as provided in 18 U.S.C. § 1964(c).

56. Plaintiffs reserve the right to allege other violations of law that constitute unlawful acts or practices under RICO.

## COUNT II
### Violation of the Tennessee Consumer Protection Act
### Tenn. Code Ann. § 47-18-101 *et seq.*

57. Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

58. The Tennessee Consumer Protection Act of 1977, codified at Tenn. Code Ann. § 47-18-101 *et seq.* ("TCPA"), prohibits unfair or deceptive acts or practices affecting trade or commerce in this state.

59. Defendant's actions alleged herein were intended to and did result in violations of numerous provisions of the TCPA. Specifically,

  a. Wells Fargo's statements to Plaintiffs constitute deceptive representations about the nature of services provided and its affiliation with Miller and Stevens;

  b. Wells Fargo's actions caused confusion by Plaintiffs as to the source of payroll funds and Wells Fargo's affiliation with and backing of DGS;

  c. Wells Fargo's statements to Plaintiffs constitute misrepresentations about the necessity or obligation of Plaintiffs to open checking accounts at Wells Fargo;

  d. Wells Fargo's actions caused confusion by Plaintiffs as to Wells Fargo's authority or control over Miller and Stevens' business operations.

60.  In other words, Wells Fargo, in conjunction with Miller and Stevens, perpetrated a scam on Plaintiffs that was intended to and did deprive them of their wages, induce them to do business with Wells Fargo, and cause the assessment of bank fees against them.

61.  Wells Fargo made multiple misrepresentations and false statements to Plaintiffs to induce them to open checking accounts and to continue their employment with DGS.

62.  Upon information and belief, Wells Fargo does not provide payroll accounting and processing services for businesses such as DGS at its retail branch locations. Wells Fargo retail employees do not regularly advise businesses on the establishment and operation of employee welfare benefits plans. Further, if Dunn had known Miller for a long time, as she represented to Plaintiffs, Dunn would have known that Miller had been convicted for writing bad checks and was not a trustworthy or honest business person. Wells Fargo's representations to the contrary are proof of its knowing and willful violations the TCPA.

63.  Wells Fargo has engaged in the same fraudulent scheme with Miller and Stevens involving DGS employees in the Houston, Texas area.

64.  Plaintiffs relied on the representations and promises made by Dunn. Plaintiffs also relied on the information shown in their electronic banking statements from Wells Fargo.

{004856/14578/00348643.DOC / Ver.4}

Case 3:15-cv-00530   Document 1   Filed 05/06/15   Page 9 of 11 PageID #: 9

65. As a result of Wells Fargo's unfair and deceptive acts, Plaintiffs worked for DGS for several weeks longer than they would have absent Defendant's unfair and deceptive acts.

66. The illegal conduct alleged in this Complaint is continuing. Specifically, Wells Fargo continues to assess Plaintiffs fees on their checking accounts.

67. Wells Fargo's actions affect trade and commerce through the provision of false and deceptive consumer banking services and products, as well as by facilitating Miller and Stevens' business operations and impacting employer-employee relations within the State.

68. Plaintiffs are entitled to all remedies available for violation of the TCPA, including but not limited to those damages provided in Tenn. Code. Ann. § 47-18-109.

69. Plaintiffs seek treble damages under the TCPA because Defendant's misconduct has been, and continues to be, willful, wanton, intentional, knowing and/or reckless.

70. Treble damages are necessary and proper to punish Defendant for its unlawful conduct and to deter it from repeating the conduct described herein.

71. Plaintiffs reserve the right to allege other violations of law that constitute unlawful acts or practices under the TCPA.

**WHEREFORE**, Plaintiffs request the following relief:

1. An award to Plaintiffs of compensatory damages against Defendants in an amount to be proven at trial;

2. An award to Plaintiffs of treble damages pursuant to RICO and the TCPA;

3. Injunctive relief enjoining Defendants' continued or future violation of RICO and the TCPA;

4. An award to Plaintiffs of punitive and exemplary damages in an amount sufficient to deter Defendants and others from the commission of similar types of fraudulent, unfair and deceptive actions in the future;

5. An award of the costs and expenses of litigation, including but not limited to attorneys' fees; and

6. An award of any further equitable or legal remedy that the Court deems appropriate.

May __, 2015

Respectfully submitted,

_____
Joe P. Lenjski, Jr. (BPR # 22891)
Karla M. Campbell (BPR # 27132)
Branstetter, Stranch & Jennings, PLLC
227 2nd Avenue North, 4th Floor
Nashville, Tennessee 37201-1631
Tel.: (615) 254-8801
Email: joel@bsjfirm.com
karlac@bsjfirm.com

*Attorneys for Plaintiffs*